IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SURGE STAFFING, LLC,** | : | Case No. 2:23-cv-00873 |
| | : | |
| Plaintiff, | : | Chief Judge Algenon L. Marbley |
| | : | |
| v. | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| **EVA LOGISTICS, INC.,** | : | |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter is before the Court on Plaintiff's Motion for Default Judgment (ECF No. 14). The time for filing a response has passed and Defendant has not responded. For the following reasons, Plaintiff's Motion (ECF No. 14) is **GRANTED**, a **DEFAULT JUDGMENT** is entered against Defendant, and Plaintiff is awarded $952,708.71 in damages and $14,122.50 in attorney's fees, for a total award of **$966,831.21**.

**I. BACKGROUND**

Plaintiff is a national leader in staffing and workplace solutions. (ECF No. 1 ¶ 6). Defendant is a warehousing and transportation company that provides crossdocking, general warehousing, inventory management, and middle and final mile transportation services. (*Id*. ¶ 7). Plaintiff seeks to collect damages from Defendant for breach of contract or, in the alternative, unjust enrichment. (*Id*. ¶¶ 22-33).

On or about September 22, 2022, the Parties entered into a service agreement in which Plaintiff agreed to assign its employees to perform certain work for Defendant. (*Id*. ¶¶ 8-9, Exhibit 1). Plaintiff also agreed to perform employer-related services for Defendant. (*Id*. ¶ 9). In consideration for Plaintiff's services, Defendant agreed to pay Plaintiff at the rates set forth in the

1

service agreement. (*Id*. ¶ 10, Exhibit 1). The service agreement included how Defendant was to pay Plaintiff, fees and interest for any late payment, and the procedure for Defendant to dispute any invoice. (Id. ¶¶ 11-14, Exhibit 1).

Plaintiff alleges it performed its end of the agreement by rendering services, but around the beginning of December 2022, Defendant stopped paying Plaintiff for services rendered. (*Id*. ¶¶ 15-18). Defendant never notified Plaintiff of any invoicing error. (*Id*. ¶ 17). Plaintiff notified Defendant of its outstanding balance and demanded payment, but Defendant has failed to pay Plaintiff the money it owes. (*Id*. ¶¶ 19-20).

On March 3, 2023, Plaintiff filed its Complaint. (ECF No. 1). On May 11, 2023, Defendant was served with a Summons and a copy of the Complaint. (ECF No. 11). Defendant failed to appear or to file a timely answer. Consequently, on June 6, 2023, Plaintiff applied to the Clerk for entry of default against Defendant. (ECF No. 12). On June 8, 2023, the Clerk entered default against Defendant. (ECF No. 13). Plaintiff now moves for default judgment. (ECF No. 14). Defendant has not responded and the time to do so has passed. This matter is now ripe for judgment by this Court.

## II. LAW & ANALYSIS

### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs defaults and default judgments. *See* Fed. R. Civ. P. 55. The first step is entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default is entered, a party may take the second step by moving for default judgment. Fed. R. Civ. P. 55(b). At the default judgment stage, "the complaint's factual allegations regarding liability are taken as

true, while allegations regarding the amount of damages must be proven." *Arthur v. Robert James & Assocs. Asset Mgmt., Inc.*, 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (internal quotation marks omitted).

The entry of default does not automatically entitle the plaintiff to a default judgment. *Methe v. Amazon.com.dedc, LLC,* 2019 WL 3082329, at *1 (S.D. Ohio July 15, 2019). "The plaintiff must still show that, when all of the factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted." *Id.*; *see also F.C. Franchising Sys., Inc. v. Schweizer*, 2012 WL 1945068 at *3 (S.D. Ohio May 30, 2012) ("[I]t remains for the district court to consider whether the unchallenged facts constitute a cause of action, since a party in default does not admit mere conclusions of law." (citing *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010)).

When considering whether to enter default judgment, the Sixth Circuit instructs courts to consider the following factors:

> (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); and *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193–94 (6th Cir. 1986)).

Here, Plaintiff properly applied for an entry of default after Defendant failed to answer its Complaint and the Clerk subsequently entered Defendant's default. (ECF Nos. 12, 13). Next, this Court will address the *Russell* factors, beginning with the sufficiency of the Complaint and the merits of the claims.

*1. Sufficient and Meritorious Claim*

The Complaint alleges relief under breach of contract or, in the alternative, unjust enrichment. Taking the factual allegations as true, this Court finds that the Complaint states a sufficient and meritorious claim against Defendant for breach of contract. Based on Ohio law, this Court does not find a sufficient and meritorious claim against Defendant for unjust enrichment.

*a. Breach of Contract*

In Count One of the Complaint, Plaintiff alleges breach of contract. (ECF No. 1 ¶¶ 22-27). Under Ohio law, a plaintiff states a claim for breach of contract when there is: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Taking the facts stated in the Complaint as true, on or about September 22, 2022, the Parties entered into a service agreement where Plaintiff agreed to assign its employees to perform certain work for Defendant in exchange for money. (ECF No. 1 ¶¶ 9-10). Plaintiff performed its obligations under the agreement by, among other things, assigning its employees to perform work at Defendant's facility in Franklin, Indiana. (*Id.* ¶ 15). Starting around the beginning of December 2022, Defendant failed to uphold its end of the agreement by not paying Plaintiff for services rendered. (*Id.* ¶¶ 18). Defendant did not notify Plaintiff of any invoicing error. (*Id.* ¶ 17). Plaintiff notified Defendant of its outstanding balance and demanded payment, but never received payment. (*Id.* ¶¶ 19-20). Defendant's breach of contract is the proximate and direct cause of Plaintiff's damages. (*Id.* ¶ 21). Accordingly, Plaintiff's Complaint states a valid claim for breach of contract. Therefore, this factor weighs in favor of default judgment.

*b. Unjust Enrichment*

In Count 2 of the Complaint, Plaintiff alleges, in the alternative, unjust enrichment. Under

Ohio Law, "a plaintiff may not recover under a theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Lehmkuhl v. ECR Corp.*, No. 06 CA 039, 2008 WL 5104747, at *5 (Ohio Ct. App. Dec. 2, 2008). Here, Plaintiff's claim is based upon an express agreement—i.e. the service agreement between the Parties. (ECF No. 1, Exhibit 1). Therefore, the facts of this case cannot support an unjust enrichment claim.

### 2. Prejudice to Plaintiff

Having found Plaintiff's breach of contract claim sufficient and meritorious, this Court must then examine possible prejudice to Plaintiff if default judgment is not granted. Plaintiff likely will be prejudiced if its Motion is denied. Plaintiff has yet to be paid for services it provided Defendant almost a year ago. Plaintiff notified Defendant of its outstanding balance under the service agreement and requested payment, but Defendant failed to pay Plaintiff the money it owes. Defendant then failed to respond to Plaintiff's Complaint and Plaintiff's Motion for Default Judgment. To deny default judgment would render Plaintiff's effort at a civil resolution futile, while rewarding Defendant's avoidance of this litigation. Moreover, were Plaintiff to file another lawsuit, all indications are that it would return to the default judgment stage. Courts find the prejudice factor to be satisfied under such circumstances. *See, e.g.*, *Toler v. Glob. Coll. of Nat. Med., Inc.*, 2016 WL 67529, at *7 (E.D. Mich. Jan. 6, 2016). Accordingly, this factor weighs in favor of default judgment.

### 3. Amount of Money at Stake

Next, the Court considers the amount of money at stake. Plaintiff alleges damages totaling $952,708.71, exclusive of attorney's fees. This total is on the higher end of the spectrum for typical federal cases. Notably, when this Court sits in diversity jurisdiction, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332. The amount of damages Plaintiff seeks is well over the

diversity jurisdiction threshold amount. Accordingly, this factor weighs in favor of default judgment.

### 4. Possible Disputed Material Facts

As for the possibility of disputed material facts, Defendant has not given this Court anything to evaluate since it has not participated in this case. Specifically, Defendant did not respond to Plaintiff's Complaint, thereby forfeiting its right to dispute any of Plaintiff's allegations. Defendant. *See Tomlinson v. E. Recovery & Remediation Grp., LLC*, 2019 WL 1380313, at *4 (E.D. Mich. Mar. 27, 2019). Defendant also failed to respond to Plaintiff's Motion for Default Judgment. Therefore, this factor weighs in favor of default judgment.

### 5. Default Due to Excusable Neglect

It is not apparent whether excusable neglect played a role in Defendant's default in this case. Despite being properly served (*see* ECF No. 3), Defendant never made an appearance, answered Plaintiff's Complaint, or responded to Plaintiff's Motion for Default Judgment. Since the reason(s) for Defendant's silence are unknown, this Court treats this factor as neutral.

### 6. Preference for Decisions on the Merits

Finally, this Court must consider "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Inevitably, this factor is in tension with default judgment. When trial on the merits is not attainable, however, courts recognize that this policy preference must yield to the needs of litigants actually before them. *See, e.g.*, *Toler v. Glob. Coll. of Nat. Med., Inc.*, 2016 WL 67529, at *9 (E.D. Mich. Jan. 6, 2016) ("[W]hile public policy favors resolution of cases on the merits, Defendants and their Counsel have consistently ignored opportunities for a merits-based resolution by refusing to respond in this matter . . . . 'Effective judicial administration requires that at some point disputes

be treated as finally and definitively resolved.'" (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed.)). Since no other factors disfavor default judgment, and since a decision on the merits is neither realistic nor attainable in this case, policy preferences will not preclude Plaintiff's requested relief. Therefore, Plaintiff's Motion for Default Judgment (ECF No. 14) is **GRANTED**.

### B. DAMAGES, FEES, AND COSTS

#### *1. Damages*

Having found default judgment proper, the Court next must determine the appropriate measure of damages. Rule 55(b)(2) permits the Court to conduct an evidentiary hearing to determine damages, but it does not require one. *See Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009). On the one hand, if damages are calculable or liquidated, then the court may forego an evidentiary hearing because the facts establishing damages are not distinct from the facts establishing liability. *See Barnes v. Abraham, Inc.*, 2017 WL 5714091, at *2 (S.D. Ohio Nov. 28, 2017). On the other hand, "[w]here damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal quotation marks omitted).

Here, Plaintiff seeks $952,708.71 for the cost of services rendered, plus late fees and interest accrued per the service agreement. Plaintiff provided the Court with the following evidence: (1) the Parties' service agreement (ECF No. 14-1, Exhibit 1); (2) affidavit of Plaintiff's Chief Financial Officer, Howard Fickel (ECF No. 14-1, Exhibit A); an invoice for Defendant (ECF No. 14-1, Exhibit 2); and a table with late fees and interest accrued (ECF No. 14-1, Exhibit 3). The evidence Plaintiff provided establishes the calculability of its damages. Therefore, this Court is satisfied it can determine the appropriate damages without an evidentiary hearing.

Defendant agreed in the service agreement to pay all invoices from Plaintiff within 15 days of the invoice date, and in the event it failed timely to pay an invoice, Defendant agreed to pay a $35.00 late fee and interest at the rate of 5% per month thereafter. (ECF No. 1, Exhibit 1). The Parties further agreed that if Defendant failed to dispute any portion of an invoice within 14 days of the invoice date, any right to correct an invoice would be waived and the invoice would be treated as final. (*Id.*). Based on the evidence provided by Plaintiff, Defendant owes Plaintiff $765,496.60 for services rendered, plus $2,170.00 for late fees and $185,042.20 for interest accrued. Accordingly, Plaintiff's requested award of **$952,708.71** for damages is **GRANTED**.

### 2. Attorney's Fees

Plaintiff also requests $14,122.50 in attorney's fees. "The party seeking attorneys fees bears the burden of documenting his entitlement to the award." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). Here, the service agreement states "[Eva Logistics] also agrees to reimburse Surge for any out-of-pocket expenses incurred to enforce this Agreement, including but not limited to collection agency fees, court costs, and attorney fees." (ECF No. 14-1, Exhibit 1). While the service agreement does not state that Defendant will pay Plaintiff "reasonable" attorney's fees, this Court will nonetheless analyze whether Plaintiff's requested amount of attorney's fees is reasonable.

"The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). In fee-shifting cases, there is a "'strong presumption' that the lodestar represents the 'reasonable' fee." *B & G Mining, Inc. v. Dir., OWCP*, 522 F.3d 657, 662 (6th Cir. 2008) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The party seeking fees must justify its request with specific evidence detailing the

8

number of hours worked and the appropriate hourly rate. *Miller v. Caudill*, 936 F.3d 442, 452 (6th Cir. 2019).

a. *Hourly Rate*

"Courts look to the 'prevailing market rate in the community'—or 'that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record'—to determine a reasonable hourly billing rate." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 899 (6th Cir. 2020) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). Here, Plaintiff''s counsel provided the Court with a declaration from counsel. (ECF No. 14-2, Exhibit B). According to the declaration, Mr. Anthony C. White, Mr. Todd M. Seaman, and Ms. Kelsey J. Mincheff represent Plaintiff. (*Id.* ¶ 2). Mr. White did not bill any of his time for this case. (*Id.* ¶ 3). Mr. Seaman, an attorney with 10 years of experience in business litigation, billed a lodestar rate of $465/hour, despite his standard billing rate being $525/hour. (*Id.* ¶ 4). Ms. Mincheff, an attorney with 5 years of experience in business litigation, billed a lodestar rate of $390/hour, despite her standard billing rate being $450/hour. (*Id.* ¶ 5). When considering the experience of the attorneys in this case, the attorneys' normal billing rates, and the Court's own knowledge and expertise in handling similar fee requests, this Court finds that the requested hourly rates for Plaintiffs' attorneys are reasonable.

b. *Number of Hours*

In determining whether the number of hours expended on a case is reasonable, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598

(2001)). "The documentation offered in support of the hours charged must be of sufficient detail to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of such litigation." *Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 913 (N.D. Ohio 2010), *aff'd in part, rev'd in part*, 499 F. App'x 538 (6th Cir. 2012) (citing *United Slate Tile and Composition Roofers v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502, n. 2 (6th Cir. 1984)). Additionally, counsel is expected to exercise billing judgment by excluding "hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Here, Plaintiff provided the Court with a timesheet showing the number of hours billed and a description of the work rendered. (ECF No. 14-2, Exhibit 1). The attorneys billed a total of 31 hours in this case. (*Id.*). After reviewing the timesheet, this Court finds that the number of hours expended on this case by Plaintiff's counsel was reasonable. Accordingly, Plaintiff's requested award of **$14,122.50** for attorney's fees is **GRANTED.**

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment against Defendant is **GRANTED**, a **DEFAULT JUDGMENT** is entered against Defendant, and Defendant is **ORDERED** to pay Plaintiff $952,708.71 in damages and $14,122.50 in attorney's fees, for a total amount of **$966,831.21**. This case is **CLOSED**.

**IT IS SO ORDERED.**

_____
ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: October 30, 2023**

10